■ MARINE MIDLAND BANK, N. A., Appellant, v PETER B. BERRY, Respondent.—Order of the Appellate Term, First Department, entered June 6, 1985, which reversed the judgment of the Civil Court, New York County (Charles Ramos, J.), entered on January 30, 1984 in plaintiff's favor, and in its stead directed judgment for defendant, is unanimously reversed, on the law and facts, and the judgment of Civil Court reinstated, with costs and disbursements.

On June 16, 1979, defendant Peter Berry drew a check on his account at the plaintiff bank, payable to "R. Hamilton and the National Bank of Middlebury, Vermont", in the amount of $6,518.31. This check was delivered to Hamilton on that date and intended to pay Hamilton's debt to the Vermont bank. Defendant Berry in return expected to receive title to three vehicles from Hamilton.

Having not received the titles, defendant told Hamilton he would stop payment on the check on Monday, June 18, 1979. He then communicated a stop payment order to plaintiff on Tuesday, June 19, both by telephone and later by personally delivering a stop payment order. The telephone stop order misdesignated the check number as 245 rather than 244 and the date as June 17 rather than June 16. In addition, the payee was incorrectly listed in the stop order as First National Bank of Middlebury, Vermont, R. Hamilton and the amount was noted as $6,511.31, *not* $6,518.31. When defendant confirmed the stop payment instructions in person, he apparently corrected his error as to the amount but the errors as to the check number, date and payee remained.

On Thursday, June 21, the plaintiff paid the check and debited the defendant's account. Defendant testified at trial that one of plaintiff's officers had told him that the check had been paid in response to a telephone call from the Vermont bank on June 18 and, accordingly, Marine had committed itself to paying the check on that date. Neither the check nor any other Marine Midland records substantiated this testimony. Defendant acquiesced in a loan to cover a claimed shortfall and defaulted on that loan, which triggered the instant action.

Civil Court held that the stop payment order was insufficient to reasonably identify the check and entered judgment for plaintiff for principal and interest on the promissory note. The Appellate Term reversed, finding that, absent contrary instructions from the defendant, defendant could rightfully expect that the funds in his account would be applied to the payment of the check only after the plaintiff received the payee's authorized indorsement. It ruled that plaintiff had committed itself to pay the check on June 18 and that this immediate commitment of funds in defendant's account three days prior to the presentment of the indorsed check for payment was improper, absent notification to the defendant of such procedure and defendant's consent to that procedure. Appellate Term also held that the plaintiff already was aware of the transaction, having been alerted by the payee Vermont bank and thus it should have been able to ascertain defendant's stop order was addressed to the check in question payable to that payee even though the check number and date were off by one digit. It concluded that plaintiff paid the check over the stop order because it had already committed itself (erroneously) to pay when the instrument was presented. Consequently, it decided that plaintiff had no right to debit

defendant's account and the loan and note were without consideration.

We disagree with the findings and conclusions reached by Appellate Term, and therefore reverse.

Although the Civil Court correctly allowed defendant's testimony as to what the bank officer told him as an admission by a party opponent, all the trial court concluded on the basis of this unsubstantiated testimony was that plaintiff Midland had "acknowledged" the item to the payee Vermont bank. There was nothing in the record, however, to support the implicit assumption by the Appellate Term that the June 18 acknowledgment was communicated to the bookkeeping department of the bank that handled check payments and stop payment instructions. The record substantiates only that the check was paid on June 21, 1979, upon proper payment indorsement of the same date and not upon any commitment or acknowledgment of June 18.

UCC 4-403 (1) provides: "A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in Section 4-303."

We agree with the trial court's conclusion that the defendant's instructions failed to afford the bank a "reasonable opportunity" to act on them before it paid the check. The latest stop instruction contained no fewer than three errors as to check number, date and name of one of the payees. We are not aware of any prior case which has held that a bank was given a reasonable opportunity to act on a check with three such errors in the stop payment order. Defendant need not have identified the check with precise and exact information as to all of its identifying characteristics (see, e.g., *Thomas v Marine Midland Tinkers Natl. Bank*, 86 Misc 2d 284; *Hughes v Marine Midland Bank*, 127 Misc 2d 209). However, under the circumstances herein, the stop payment order did not "afford the bank a reasonable opportunity to act on it" because of the number and nature of the errors contained in it. For us to decide otherwise would impose a tremendous new burden on the free flow of commercial paper through the banking system, contrary to sound public policy. Concur—Sandler, J. P., Asch, Kassal, Rosenberger and Ellerin, JJ.